1
2
3
4          UNITED STATES DISTRICT COURT

5          NORTHERN DISTRICT OF CALIFORNIA

6

7   TULARE LOCAL HEALTH CARE
    DISTRICT, et al.,                        Case No.  15-cv-02711-PJH
8
            Petitioners,
9                                            **ORDER GRANTING SUMMARY
        v.                                   JUDGMENT FOR RESPONDENTS**
10
    CALIFORNIA DEPARTMENT OF                 Re: Dkt. Nos. 64, 66
11  HEALTH CARE SERVICES, et al.,

12          Respondents.

13

14

15          Petitioners' motion for summary judgment (Dkt. 64) and respondents' motion for

16  summary judgment (Dkt. 66) came on for hearing before this court on March 21, 2018.

17  Petitioners appeared through their counsel, Thomas Weiss.  Respondents appeared

18  through their counsel, Carolyn Tsai and Susan Carson.  Having read the papers filed by

19  the parties and carefully considered their arguments and the relevant legal authority, and

20  good cause appearing, the court hereby GRANTS respondents' motion and DENIES

21  petitioners' motion, for the following reasons.

22                              **BACKGROUND**

23  **A.    Procedural History**

24          Petitioners are fourteen California hospitals or health care districts.  Amended

25  Petition, Dkt. 60 ("FAP") ¶ 4.  They challenge the implementation of statutes enacted by

26  the California Legislature, which reduced payments to certain Medi-Cal (California

27  Medicaid) providers.  Id. ¶¶ 12, 19–20.  Respondents are the California Department of

28  Health Care Services ("DHCS" or the "Department") and its director, Jennifer Kent, in her

official capacity.

This case was originally filed in May 2015 as a petition for writ of mandate under California Code of Civil Procedure § 1085[1] and for declaratory relief under California Code of Civil Procedure § 1060. Dkt. 1, Ex. A at 1, 5, 11, 19. The petition was originally filed in the Superior Court of California, County of San Francisco, and was removed to this court by respondents DHCS and its director, Jennifer Kent, on June 17, 2015, on the basis of federal question jurisdiction, where it was assigned to Judge Conti. Dkt. 1; Dkt. 11. Petitioners filed a motion to remand, arguing that there was no viable claim under federal law. Dkt. 4. They asserted that there is no viable federal claim under 42 U.S.C. § 1396a(a)(30)(A) ("§ 30(A)") because "the hospital petitioners do not have standing to enforce Section 30(A) in the federal courts," although they argued that state courts would have the power to decide the merits under state law. Dkt. 4 at 4 (citing Armstrong v. Exceptional Child Ctr., Inc., 135 S. Ct. 1378 (2015)).

On September 9, 2015, Judge Conti issued an order denying the motion to remand, finding (1) that petitioners' petition "raise[d] a number of issues of federal law, including the adequacy of Medi-Cal reimbursements under Section (30)(A)," even though the federal law to be resolved was raised by way of a state-law cause of action; and (2) that the Supreme Court in Armstrong "held that Section (30)(A) does not confer a private right of action and the sole remedy provided by Congress for a State's failure to comply with Section (30)(A) is the withholding of Medicaid funds by the Secretary of Health and Human Services [(the "Secretary")]." Dkt. 20 at 4–6.

On November 3, 2015, following Judge Conti's retirement from the court, the case was reassigned to the undersigned. On March 8, 2016, petitioners filed a motion for reconsideration of Judge Conti's order on their motion to remand. Dkt. 32. The court denied the motion, reasoning that "to the extent that petitioners seek a writ of mandamus based on an alleged violation of § 30(A) and related federal regulations, while they will be

---

[1] Under California law, a party may bring an action in the nature of mandamus by seeking a writ of mandate pursuant to California Code of Civil Procedure § 1085.

unable to proceed on the first cause of action in this court, per <u>Armstrong</u>, 135 S. Ct. at 1385, it appears that <u>Sanchez</u> [416 F.3d 1051 (9th Cir. 2005)] may not bar the second cause of action, which asserts a claim of violation of the Equal Protection Clause of the U.S. Constitution, not a claim under § 30(A)." Dkt. 47 at 8.

On September 27, 2017, petitioners filed an amended petition. <u>See</u> FAP. However, the amended petition does not state a cause of action under the Equal Protection Clause. <u>Id.</u> Petitioners allege two causes of action. In the first cause of action, they seek a "writ of mandate for violation of federal and state statutes and regulations and the state plan." <u>Id.</u> at 11. Petitioners allege violations of two principal federal statutes: 42 U.S.C. § 1396a(a)(30)(A) (§ 30(A)) and 42 U.S.C. § 1396a(a)(13)(A)(ii) ("§ 13(A)"), in addition to 42 U.S.C. § 1396a(a)(8) and several federal regulations. The second cause of action is for "declaratory relief" in the form of a declaration that the reduced payments to Medi-Cal providers were invalid and unlawful for the reasons alleged in the first cause of action, and it seeks an order requiring that the Department "disgorge and pay the Petitioners the monies collected under" the reduced payments to Medi-Cal providers. FAP ¶¶ 49–51.

On January 31, 2018, petitioners and respondents cross-moved for summary judgment on the action. Dkts. 64, 66.

**B.     Factual Record**

Much of the factual record before the court is not disputed. Rather, the parties' competing motions for summary judgment turn on legal questions. The case is therefore appropriate for adjudication by summary judgment.

**1.     Medicaid**

Congress created the Medicaid program as a voluntary program through which states could elect to receive federal funds in exchange for providing medical services to low-income, elderly, and disabled individuals according to federal parameters. "Like other Spending Clause legislation, Medicaid offers the States a bargain: Congress provides federal funds in exchange for the States' agreement to spend them in

3

accordance with congressionally imposed conditions." Armstrong, 135 S. Ct. at 1382.

To qualify for federal funds, states must submit their state plans and state plan amendments to the Centers for Medicare & Medicaid Services ("CMS"), a division of the federal Health and Human Services ("HHS") agency, to "determine whether they comply with the statutory and regulatory requirements governing the Medicaid program." Douglas v. Indep. Living Ctr. of S. Cal., Inc., 565 U.S. 606, 610 (2012). If a state is unable or unwilling to satisfy the requirements imposed by the Medicaid Act and its governing regulations, it may: (1) voluntarily withdraw from the Medicaid program; (2) seek a waiver from the Secretary of HHS; or (3) risk federal penalties, including the withholding of some or all of its federal funding. See 42 U.S.C. § 1396c.

### 2. 2008 California State Plan Changes

On February 16, 2008, the California Legislature filed Assembly Bill ("AB") 5 with the Secretary of State. 2008 Cal. Legis. Serv. 3rd Ex. Sess. Ch. 3 (A.B. 5) (West). On September 17, 2008, it filed AB 1183 with the Secretary of State. 2008 Cal. Legis. Serv. Ch. 758 (A.B. 1183) (West). The parties do not dispute that those enactments reduced Medi-Cal payments to petitioner hospitals.

AB 5 reduced certain payments to provider hospitals "by 10 percent . . . for dates of service on and after July 1, 2008." 2008 Cal. Legis. Serv. 3rd Ex. Sess. Ch. 3 (A.B. 5) (West); Cal. Welf. & Inst. Code § 14105.19; Cal. Welf. & Inst. Code § 14166.245(b) & (c)(3) (repealed in 2011, effective 2013). AB 1183 reduced hospital payments for dates of service on or after October 1, 2008, to the "applicable regional average per diem contract rate . . . reduced by 5 percent[.]" 2008 Cal. Legis. Serv. Ch. 758 (A.B. 1183) (West); Cal. Welf. & Inst. Code § 14166.245(b)(2)(A) (repealed in 2011, effective 2013).

In 2011, the California Legislature enacted SB 90, a bill that eliminated both the AB 5 and AB 1183 hospital rate reductions on a prospective basis effective April 13, 2011. 2011 Cal. Legis. Serv. Ch. 19 (S.B. 90) (West); Cal. Welf. & Inst. Code § 14166.245(j) (repealed in 2011, effective 2013). Therefore, the payment reductions set forth in AB 5 and AB 1183 expired on April 13, 2011. Id.

1   The payment reductions at issue in this case became final when CMS approved

2   the state plan amendments on October 27, 2011, effective July 1, 2008.  Dkt. 64-1,

3   Ex. 10; Dkt. 66-4 ("Emery Decl."), Ex. O.

4       **3.    Notice**

5   Undisputed evidence indicates that the Department published nine public notices

6   regarding AB 5 and AB 1183, at least four of which sought public comment and eight of

7   which were published prior to the implementation of the relevant payment reductions.

8   Dkt. 66-3 ("Ong Decl.") ¶¶ 9–17; Exs. A–I; see also Dkt. 69 at 6.  The Department first

9   published a notice about the AB 5 payment reduction in the California Regulatory Notice

10  Register on March 28, 2008.  Ong Decl. ¶ 9, Ex. A.  On May 30, 2008, the Department

11  published on its Medi-Cal website a notice describing the 10% reduction and the statutory

12  justifications for the AB 5 payment reduction for non-contract hospital inpatient services.

13  Id. ¶ 10, Ex. B.  On June 6, 2008, the Department published another notice about the

14  AB 5 rate reduction for non-contract hospital inpatient services in the California

15  Regulatory Notice Register.  Id. ¶ 11, Ex. C.  On June 25, 2008, the Department

16  published a fourth notice on its Medi-Cal website that: (1) provided details regarding the

17  upcoming AB 5 payment reductions; (2) advised that the Department had reviewed and

18  considered public comments; and (3) informed the public that the reductions would take

19  effect for services rendered on or after July 1, 2008.  Id. ¶ 12, Ex. D.  On June 27, 2008,

20  the Department published a fifth notice with the same details in the California Regulatory

21  Notice Register.  Id. ¶ 13, Ex. E.  All of these notices were published prior to the July 1,

22  2008 implementation date for the relevant reductions.  Id. ¶¶ 9–13, Exs. A–E.

23  On September 5, 2008, the Department published a notice in the California

24  Regulatory Notice Register regarding the proposed AB 1183 payment reductions which

25  specified that, subject to then pending legislation, an alternative rate would be effective

26  for some non-contract hospitals for services rendered beginning on October 1, 2008.  Id.

27  ¶ 14, Ex. F.  On September 26, 2008, the Department published another notice in the

28  California Regulatory Notice Register which provided updated information regarding the

1  alternative reduction.  Id. ¶ 15, Ex. G.  That same day, the Department published a

2  similar notice on its Medi-Cal website.  Id. ¶ 16, Ex. H.  On October 3, 2008, the

3  Department published another notice in the California Regulatory Notice Register

4  concerning the AB 1183 reductions that were effective beginning October 1, 2008.  Id.

5  ¶ 17, Ex. I.

6  **4.  CMS Review**

7  On September 30, 2008 and December 31, 2008, the Department submitted state

8  plan amendments to CMS seeking approval of the AB 5 and AB 1183 payment

9  reductions (the "SPAs").  Emery Decl. ¶¶ 3, 7, Exs. A–C.  Over the next two years, the

10  Department provided CMS with additional information regarding these SPAs.  Id. ¶¶ 3–

11  25, Exs. A–M.  On November 18, 2010, CMS initially disapproved of the plans "because

12  California has not demonstrated that it would meet the conditions set out in section

13  1902(a)(30)(A) of the Social Security Act (Act)."[2]  Id., Ex. G.  Over the next 10 months,

14  back-and-forth communications between CMS and the Department ensued, and the

15  Department submitted more data and additional revisions to the plans to address CMS's

16  concerns.  Id. ¶¶ 14–25, Exs. I–U.  On October 5, 2011, the Department submitted a

17  revised version of the SPAs to CMS.  Id. ¶ 18, Ex. M.  On October 27, 2011, CMS

18  approved those revised SPAs and stated that the challenged payment reductions

19  "comply with section 1902(a)(30)(A) of the Act and all other applicable requirements of

20  the Act[.]"  Id. ¶ 20, Ex. O at 2.

21  **DISCUSSION**

22  **A.  Legal Standard**

23  A party may move for summary judgment on a "claim or defense" or "part of" a

24  claim or defense.  Fed. R. Civ. P. 56(a).  Summary judgment is appropriate when there is

25  no genuine dispute as to any material fact and the moving party is entitled to judgment as

26  _____

27  [2] Title XIX of the Social Security Act—sometimes referred to as the "Medicaid Act"
because it established Medicaid—was codified at 42 U.S.C. §§ 1396 et seq.  E.g., Hoag

28  Mem'l Hosp. Presbyterian v. Price, 866 F.3d 1072, 1077 (9th Cir. 2017); Sanchez v.
Johnson, 416 F.3d 1051, 1054 (9th Cir. 2005).

a matter of law.  Id.

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Material facts are those that might affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  Id.

Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007).  On an issue where the nonmoving party will bear the burden of proof at trial, the moving party may carry its initial burden of production by submitting admissible "evidence negating an essential element of the nonmoving party's case," or by showing, "after suitable discovery," that the "nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial."  Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1105–06 (9th Cir. 2000); see also Celotex, 477 U.S. at 324–25 (moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case).

When the moving party has carried its burden, the nonmoving party must respond with specific facts, supported by admissible evidence, showing a genuine issue for trial.  Fed. R. Civ. P. 56(c), (e).  But allegedly disputed facts must be material—the existence of only "some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]"  Anderson, 477 U.S. at 247–48.

When deciding a summary judgment motion, a court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor.  Id. at 255; Hunt v. City of Los Angeles, 638 F.3d 703, 709 (9th Cir. 2011).  In adjudicating

cross-motions for summary judgment, the Ninth Circuit "evaluate[s] each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences." ACLU of Nev. v. City of Las Vegas, 466 F.3d 784, 790–91 (9th Cir. 2006).

**B.    Analysis**

Petitioners seek relief based primarily on alleged violations of 42 U.S.C. § 1396a(a)(30)(A) and 42 U.S.C. § 1396a(a)(13)(A)(ii).  FAP ¶¶ 22 & 39.

**1.    § 30(A)**

The court first considers the threshold question of whether petitioners can privately enforce § 30(A) of the Medicaid Act by bringing a case against the California Department of Health Care Services or its director seeking a writ of mandate pursuant to California Code of Civil Procedure § 1085.  The court finds that a writ of mandate is not an available mechanism to privately enforce § 30(A) for the reasons that follow.

Section 30(A) states:  "A State plan for medical assistance must provide such methods and procedures relating to the utilization of, and the payment for, care and services available under the plan (including but not limited to utilization review plans as provided for in section 1396b(i)(4) of this title) as may be necessary to safeguard against unnecessary utilization of such care and services and to assure that payments are consistent with efficiency, economy, and quality of care and are sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area[.]" 42 U.S.C. § 1396a(a)(30)(A).[3]

Respondents argue that petitioners are using the wrong vehicle to sue the wrong parties, and that petitioners should instead challenge the United States Department of Health and Human Services or the Centers for Medicare & Medicaid Services under the

---

[3] The petition also references 42 C.F.R. § 447.204, although petitioners do not address the regulation in their moving or opposition papers.  FAP ¶ 42.  Respondents move for summary judgment on the issue, and petitioners address the substance of the regulation when discussing § 30(A), which has nearly identical language.  Because the regulation is identical to § 30(A) in substance, the court's order with respect to § 30(A) applies also to petitioners' claim concerning 42 C.F.R. § 447.204.

APA.  Dkt. 66 at 2, 10–11; Dkt. 74 at 2–4.  They argue that the Supreme Court has held

that there is no private right of action under § 30(A) in <u>Armstrong</u>, nor can petitioners

seek to enforce the section by invoking courts' equitable powers.  Dkt. 66 at 16–17; Dkt.

70 at 2–4; Dkt. 74 at 4.  Respondents argue that mandamus—the vehicle by which

petitioners seek relief—invokes the court's equitable powers.  Dkt. 70 at 2.  Respondents

argue that "<u>Douglas</u> and <u>Armstrong</u> collectively require Petitioners to bring an APA action

directly against the Secretary, and foreclose this attempt to evade APA review."  <u>Id.</u>

Petitioners argue that <u>Armstrong</u> "does not limit the right of Medi-Cal providers to

enforce Section 30(A)."  Dkt. 64 at 12.  They argue that "five members of the court

agreed that Medicaid providers have some judicial remedies in federal court for a state's

failure to meet the general mandate of Section 30(A)."  <u>Id.</u>  Those five included Justice

Breyer's concurrence and the four dissenters' alleged conclusion that "direct challenges

to rates for failure to comply with Section 30(A) are permissible."  <u>Id.</u>  Petitioners thus

argue that a "majority of the court therefore rejected the proposition that providers have

no cause of action to enforce Section 30(A)" via some mechanism.  <u>Id.</u>

Petitioners also argue that <u>Armstrong</u> limits only federal courts' ability to enforce

§ 30(A) and leaves state courts wider latitude to enforce the federal statute, because the

opinions in <u>Armstrong</u> largely discuss the power of "federal courts" when enforcing a

federal statute, not state court actions or remedies.  <u>Id.</u> at 13–14.  Petitioners cite

<u>California Hosp. Ass'n v. Maxwell-Jolly</u>, 188 Cal. App. 4th 559 (2010)[4] and <u>California</u>

<u>Ass'n for Health Servs. at Home v. State Dep't of Health Care Servs.</u>, 204 Cal. App. 4th

---

[4] Because the <u>California Hospital Association</u> opinion relied so heavily and explicitly on a
holding in <u>Orthopaedic Hospital v. Belshe</u>, 103 F.3d 1491 (9th Cir. 1997) that was
rejected by subsequent Ninth Circuit authority, <u>California Hospital Association</u>'s holdings
with respect to the substantive requirements of § 30(A) also cannot be reconciled with
subsequent, controlling Ninth Circuit authority.  <u>See</u> <u>Managed Pharmacy Care v.
Sebelius</u>, 716 F.3d 1235, 1249 (9th Cir. 2013) (rejecting <u>Orthopaedic Hospital</u>'s holding
with respect to § 30(A)); <u>see also</u> <u>California Ass'n for Health Servs. at Home</u>, 204 Cal.
App. 4th at 684 n.3 ("We respectfully disagree with <u>CHA</u> [<u>California Hosp. Ass'n</u>] to the
extent it holds that section 30(A) imposes on states an obligation to consider provider
costs anytime it sets reimbursement rates.").  As such, <u>California Hospital Association</u>'s
holdings about and stemming from its understanding of the substantive requirements of
§ 30(A) are not persuasive authority.

676 (2012) for issuing writs of mandate pursuant to Cal. Civ. Proc. Code § 1085 (before Armstrong) and argue that this court must decide the case "as a State court would decide it" and should follow those cases and find a private right of action to enforce a federal statute that cannot be enforced in federal court under federal law, but can be enforced in state court through mandamus. Dkt. 72 at 2–3.

Petitioners also argue that the Armstrong opinion is factually distinguishable. They argue that the holding that the "efficiency" and "economy" requirements of § 30(A) are too complex to be enforced by courts does not apply when enforcing the federal statute in California because California has a state regulation that defines the words "efficiency" and "economy" with respect to health care (called the "peer group inpatient reimbursement limit," or the "PIRL"). Dkt. 64 at 15–16 (citing 22 C.C.R. § 51545(a)(30)). According to petitioners, this court can adopt the state's definition of those terms into the federal statute when applying the statute in California, thereby mooting the complexity underlying the Armstrong holding. Dkt. 64 at 14; Dkt. 69 at 3.

Finally, petitioners argue that Armstrong is distinguishable because it concerned only providers that could refuse to provide treatment, and this case concerns emergency care hospitals that are required to provide care irrespective of insurance status for certain extreme patient conditions. Dkt. 64 at 14–15. They argue that distinction makes the "efficiency" and "economy" requirements "essential to California hospitals, even though they may be of lesser or no importance to other types of Medi-Cal providers" like those at issue in Armstrong. Id. at 15. That is because, regardless of rates charged, emergency care providers' "access" figures will be less volatile because they will be required to admit patients with certain extreme conditions.

Precedent binding this court has explicitly held that health care providers cannot enforce § 30(A) through a § 1983 action, under the Supremacy Clause, or through the court's equitable powers to enforce the Supremacy Clause. Armstrong, 135 S. Ct. at 1382–87 (Supremacy Clause); Sanchez v. Johnson, 416 F.3d 1051, 1068 (9th Cir. 2005) (no enforceable right under § 1983 provided by § 30(A)). However, petitioner providers

are permitted to challenge CMS under the APA for abusing its discretion when approving SPAs. See, e.g., Hoag Mem'l Hosp. Presbyterian v. Price, 866 F.3d 1072, 1075, 1081 (9th Cir. 2017) (HHS Secretary abused his discretion under the APA when approving a state plan amendment "without requiring any evidence regarding 'the extent that such care and services are available to the general population in the geographic area'" (quoting § 30(A))).

In February 2012, the United States Supreme Court decided Douglas v. Indep. Living Ctr. of S. Cal., Inc., 565 U.S. 606 (2012). The issue presented in that case was whether a provider can bring a cause of action under the Supremacy Clause for a violation of § 30(A), but the issue was no longer appropriate to hear on appeal after CMS approved the state plans. The Court stated that, given the federal government's approval of the state plans, the substantive question is the same—whether the plan complies with § 30(A)—but the agency's approval "may change the answer. And it may require respondents now to proceed by seeking review of the agency determination under the Administrative Procedure Act (APA), 5 U.S.C. § 701 *et seq.*, rather than in an action against California under the Supremacy Clause." Id. at 614.

The Douglas opinion also explained why review under the APA was the appropriate vehicle for challenging compliance with § 30(A):

> [R]espondents' basic challenge now presents the kind of legal question that ordinarily calls for APA review. The Medicaid Act commits to the federal agency the power to administer a federal program. And here the agency has acted under this grant of authority [by approving the SPAs]. That decision carries weight. After all, the agency is comparatively expert in the statute's subject matter. And the language of the particular provision at issue here is broad and general, suggesting that the agency's expertise is relevant in determining its application. Finally, to allow a Supremacy Clause action to proceed once the agency has reached a decision threatens potential inconsistency or confusion. In these cases, for example, the Ninth Circuit, in sustaining respondents' challenges, declined to give weight to the Federal Government's interpretation of the federal statutory language.

Id. at 614–15; see also Managed Pharmacy Care v. Sebelius, 716 F.3d 1235, 1249 (9th

Cir. 2013) ("The Secretary understands the Act and is especially cognizant of the all-important yet sometimes competing interests of efficiency, economy, quality of care, and beneficiary access. It is well within the Secretary's mandate to interpret the statute via case-by-case SPA adjudication."); <u>Sanchez</u>, 416 F.3d at 1060 ("The language of § 30(A) is similarly ill-suited to judicial remedy; the interpretation and balancing of the statute's indeterminate and competing goals would involve making policy decisions for which this court has little expertise and even less authority. The text and structure of § 30(A) simply do not focus on an individual recipient's or provider's right to benefits, nor is the 'broad and diffuse' language of the statute amenable to judicial remedy.").

The Supreme Court reinforced its logic that the APA is the only mechanism to challenge compliance with § 30(A) in <u>Armstrong</u>, 135 S. Ct. at 1378. The Court held that "the Medicaid Act implicitly precludes private enforcement of § 30(A)[.]" <u>Id.</u> at 1385. As a result, parties "cannot, by invoking our equitable powers, circumvent Congress's exclusion of private enforcement." <u>Id.</u>

The Court explained how Congress intended to foreclose equitable relief: "First, the sole remedy Congress provided for a State's failure to comply with Medicaid's requirements—for the State's 'breach' of the Spending Clause contract—is the withholding of Medicaid funds by the Secretary of Health and Human Services. As we have elsewhere explained, the 'express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others.'" <u>Id.</u> (citations omitted). Second, the Court remarked upon "the judicially unadministrable nature of § 30(A)'s text":

> It is difficult to imagine a requirement broader and less specific than § 30(A)'s mandate that state plans provide for payments that are "consistent with efficiency, economy, and quality of care," all the while "safeguard[ing] against unnecessary utilization of ... care and services." Explicitly conferring enforcement of this judgment-laden standard upon the Secretary alone establishes, we think, that Congress "wanted to make the agency remedy that it provided exclusive," thereby achieving "the expertise, uniformity, widespread consultation, and resulting administrative guidance that can accompany agency decisionmaking," and

12

avoiding "the comparative risk of inconsistent interpretations and misincentives that can arise out of an occasional inappropriate application of the statute in a private action." The sheer complexity associated with enforcing § 30(A), coupled with the express provision of an administrative remedy, § 1396c, shows that **the Medicaid Act precludes private enforcement of § 30(A) in the courts**.

Id. (citations omitted) (emphasis added). The Court explained that the Medicaid Act precludes private enforcement of § 30(A), although providers do have an option to enforce the statute: "relief must be sought initially through the Secretary rather than through the courts." Id. at 1387.

A portion of the opinion joined only by a plurality of Justices stated that § 30(A) "lacks the sort of rights-creating language needed to imply a private right of action." Id. (plurality). Justice Breyer in concurrence wrote that it is "clear that Congress intended to foreclose respondents from bringing this particular action for injunctive relief." Id. at 1388 (Breyer, J., concurring). Justice Breyer noted that APA review would be appropriate. Id. at 1389–90 (Breyer, J., concurring) ("[I]t may be difficult for respondents to prevail on an APA claim unless it stems from an agency's particularly egregious failure to act. But, if that is so, it is because Congress decided to vest broad discretion in the agency to interpret and to enforce § 30(A).").

Although Armstrong did not squarely face the precise facts of this case—whether health care providers can bring a private cause of action pursuant to California state law to enforce § 30(A)—this court understands the holding of Armstrong to be what it says: "the Medicaid Act precludes private enforcement of § 30(A) in the courts" and can be enforced by "the sole remedy Congress provided"—"the withholding of Medicaid funds by the Secretary of Health and Human Services." 135 S. Ct. at 1385. If petitioners believe the Secretary abused his discretion, "relief must be sought initially through the Secretary rather than through the courts." Id. at 1387. The holding that Congress precluded any other enforcement mechanism is enough to decide the issue; the Armstrong decision does not leave room for this court to find that, although Congress precluded all means of enforcing § 30(A) other than the withholding of federal funds, private parties may also

13

1    enforce § 30(A) through any enforcement mechanisms the several states might enact.[5]

2        Armstrong's reasoning makes it even more clear that its holding applies to the

3    present action.  Largely echoing the logic of Douglas, the Court explained that "the

4    judicially unadministrable nature of § 30(A)'s text" properly places considerations of

5    "efficiency, economy, and quality of care," as well as "safeguard[ing] against unnecessary

6    utilization of . . . care and services," in the hands of "the Secretary alone."  Armstrong,

7    135 S. Ct. at 1385.  That procedure advances "the expertise, uniformity, widespread

8    consultation, and resulting administrative guidance that can accompany agency

9    decisionmaking," and avoids "the comparative risk of inconsistent interpretations and

10   misincentives that can arise out of an occasional inappropriate application of the statute

11   in a private action."  Id.  The Court reasoned that "[t]he sheer complexity associated with

12   enforcing § 30(A), coupled with the express provision of an administrative remedy,

13   § 1396c, shows that the Medicaid Act precludes private enforcement of § 30(A) in the

14   courts."  Id.  The same logic applies whether courts are evaluating federal or state-

15   created causes of action to enforce § 30(A).

16       The petition to enforce § 30(A) pursuant to a writ of mandate must also be denied

17   for the distinct reason that the Armstrong Court explicitly held that Congress foreclosed

18   enforcement of § 30(A) by way of the court's equitable powers, which a writ of mandate

19   invokes.  Id. (given Congress's intent to foreclose private enforcement, parties "cannot,

20   by invoking our equitable powers, circumvent Congress's exclusion of private

21   enforcement"); California Hosp. Ass'n, 188 Cal. App. at 576–77 (writ of mandate is an

22   equitable remedy:  "the purpose . . . is to compel the Department to comply with the

23   requirements set forth in section 30(A)" which "invoke[s] notions of equity").  Whatever

24

25   [5] Although Armstrong's holding was limited to the Supremacy Clause, its logic extends
     squarely to petitioners' attempt to privately enforce § 30(A) in this action.  Because the
26   reasoning of the Court is so clearly applicable to the present case, this court affords the
     "considered dicta from the Supreme Court . . . a weight that is greater than ordinary
27   judicial dicta as prophecy of what that Court might hold."  Managed Pharmacy Care, 716
     F.3d at 1246 (quoting United States v. Montero–Camargo, 208 F.3d 1122, 1132 n.17 (9th
28   Cir. 2000) (en banc)).

the scope of California Code of Civil Procedure § 1085, it cannot justify private, equitable enforcement of a federal statute where federal courts, interpreting a federal statute, have prohibited precisely such enforcement.

Although two prior orders in this case have informed petitioners that <u>Armstrong</u> precludes private enforcement of § 30(A),[6] petitioners argue that some courts have held that "<u>Armstrong</u> does not bar the plaintiffs in this case from enforcing the 'efficiency' and 'economy' requirements of Section 30(A) in the federal courts." Dkt. 64 at 12–13. None of the authority they cite supports their argument. <u>J.E. v. Wong</u>, 125 F. Supp. 3d 1099, 1107–08 (D. Haw. 2015) did not concern § 30(A) at all, but instead concerned a § 1983 action by a recipient of medical treatment for violation of 42 U.S.C. § 1396a(a)(10)(A)—a section that the Ninth Circuit has distinguished from § 30(A) with respect to § 1983 standing.[7] <u>See</u> <u>Sanchez</u>, 416 F.3d at 1061 (noting that § 1396a(a)(10) "focus[es] on individual recipients, while [§ 30(A) is] . . . concerned with the procedural administration of the Medicaid Act by the States and only refer to recipients, if at all, in the aggregate"). Petitioners cite two other cases that are distinguishable for similar reasons, concerning different subsections of the Act that provide express individual rights to direct patient beneficiaries: <u>Unan v. Lyon</u>, No. 2:14-CV-13470, 2016 WL 107193, at *11 (E.D. Mich. Jan. 11, 2016) ("the provision at issue in <u>Armstrong</u> is substantially different than the

---

[6] Order Denying Remand, Dkt. 20 at 5–6 (Conti, J.) ("In <u>Armstrong</u>, the Supreme Court held that Section (30)(A) does not confer a private right of action and the sole remedy provided by Congress for a State's failure to comply with Section (30)(A) is the withholding of Medicaid funds by the Secretary of Health and Human Services."); Order Denying Motion for Reconsideration, Dkt. 47 at 8 (Hamilton, C.J.) ("to the extent that petitioners seek a writ of mandamus based on an alleged violation of § 30(A) and related federal regulations . . . they will be unable to proceed on the first cause of action in this court, per <u>Armstrong</u>, 135 S. Ct. at 1385").

[7] The decision stressed three relevant differences between the case before it and <u>Armstrong</u>, none of which apply here: "First, Plaintiffs are Medicaid beneficiaries entitled to . . . services, not Medicaid providers. Second, Plaintiffs' suit relies on 42 U.S.C. § 1983. Plaintiff does not rely on the Supremacy Clause or an equity theory. Third, Plaintiffs sue for . . . services pursuant to individual rights conferred by 42 U.S.C. §§ 1396a(a)(10) and (43), not for higher provider reimbursement rates based on the federal agency directive in 42 U.S.C. § 1396a(a)(30)." <u>J.E.</u>, 125 F. Supp. 3d at 1107 (noting in particular "the difference between Section 1396a(a)(30) of the Medicaid Act and Section 1396a(a)(10)").

1   provisions confronted in the present case.  Here, § 1396a(a)(8) compels states to provide

2   that '*all individuals* wishing to make application for medical assistance under the plan

3   shall have opportunity to do so,' while § 1396a(a)(10)(A) requires states to provide 'for

4   making medical assistance available . . . [to] *all individuals*.'  42 U.S.C. § 1396a(a)

5   (emphasis added). In contrast, § 30(A), the provision at issue in Armstrong, is merely a

6   directive to the states without reference to any individuals' rights."), aff'd in part, rev'd in

7   part and remanded, 853 F.3d 279 (6th Cir. 2017) and O.B. v. Norwood, 170 F. Supp. 3d

8   1186, 1192 (N.D. Ill.) ("Armstrong is also inapposite here, because it addresses a

9   different statutory provision, asserted by different plaintiffs, under a different theory.").

10   Petitioners also argue that Armstrong does not control the outcome in this case

11   because California's PIRL regulation simplifies the complexities the United States

12   Supreme Court identified in § 30(A).  Petitioners ask the court to interpret § 30(A), as

13   applied to California, to incorporate the PIRL guidelines, which they argue require

14   "efficiency" to mean payments to "[h]ospitals whose costs do not exceed the PIRL[.]"

15   Dkt. 64 at 16.  Their argument is unpersuasive.  First, California cannot reduce the

16   complexity of a federal statute by unilaterally defining or altering its terms, particularly as

17   here where Congress "[e]xplicitly conferr[ed] enforcement of this judgment-laden

18   standard upon the Secretary alone[.]"  Armstrong, 135 S. Ct. at 1385.  Second, even if it

19   could, both California state courts and the Ninth Circuit have independently held that

20   § 30(A) does not require the Department to consider provider costs.  See California Ass'n

21   for Health Servs. at Home, 204 Cal. App. 4th at 684; Managed Pharmacy Care, 716 F.3d

22   at 1249; Hoag, 866 F.3d at 1079 (reaffirming the "holding in Managed Pharmacy Care

23   that § 30(A) does not require the Secretary to follow any fixed methodology or consider

24   any given factor in reaching the statute's required substantive result," especially when

25   related to the economic and efficiency factors).  But defining "efficiency" as used in

26   § 30(A) based on the PIRL guidelines as petitioners suggest—by assessing whether

27   provider costs exceed the PIRL—would do just that.  Dkt. 64 at 15–16.

28   Petitioners also argue that Armstrong does not control the outcome in this case

because it did not concern providers that were unable to refuse treatment to certain emergency patients. But the emergency-provider distinction was not relevant to the Supreme Court's analysis in <u>Armstrong</u>, and the court sees no reason why it is relevant here.

### 2. § 13(A)

The court first considers the threshold question of whether petitioners can privately enforce § 13(A) by bringing a case against the California Department of Health Care Services or its director seeking a writ of mandate pursuant to California Code of Civil Procedure § 1085. Second, assuming a writ of mandate could issue for a violation of § 13(A), the court assesses the merits of whether such a writ should issue in this case.

Section 13(A)(ii) provides: "A State plan for medical assistance must provide for a public process for determination of rates of payment under the plan for hospital services, nursing facility services, and services of intermediate care facilities for the mentally retarded under which providers, beneficiaries and their representatives, and other concerned State residents are given a reasonable opportunity for review and comment on the proposed rates, methodologies, and justifications[.]" 42 U.S.C. § 1396a(a)(13)(A)(ii).

### a. Whether Petitioners Can Privately Enforce § 13(A) Through This Action

The parties dispute whether the caution in <u>Douglas</u> and the holding in <u>Armstrong</u> regarding § 30(A) extend to § 13(A). Respondents argue that § 13(A) does not have the type of rights-creating language needed to imply a private right of action (Dkt. 66 at 11–12 (citing <u>Armstrong</u>, 135 U.S. at 1387)), and petitioners argue that rights-creating language is only relevant to determine whether a § 1983 cause of action exists—not whether petitioners can enforce § 13(A) by means of a writ of mandate under California Code of Civil Procedure § 1085 (Dkt. 69 at 7–8).

When evaluating whether a provider could bring a cause of action under "the Medicaid Act itself," a plurality of the <u>Armstrong</u> court reasoned that "Section 30(A) lacks

17

the sort of rights-creating language needed to imply a private right of action." 135 S. Ct. at 1387 (plurality). Rather, § 30(A) "is phrased as a directive to the federal agency charged with approving state Medicaid plans, not as a conferral of the right to sue upon the beneficiaries of the State's decision to participate in Medicaid." Id. (plurality). The plurality's reasoning concerned all of 42 U.S.C. § 1396a(a). Id. (plurality) ("The Act says that the 'Secretary shall approve any plan which fulfills the conditions specified in subsection (a),' the subsection that includes § 30(A). 42 U.S.C. § 1396a(b). We have held that such language 'reveals no congressional intent to create a private right of action.'").

Following that guidance, the court determines whether § 13(A) has the "rights-creating" language necessary to create a cause of action under the Medicaid Act itself that might be enforced by petitioners pursuant to a writ of mandate, or alternatively whether, applying the principles of Armstrong and Douglas, § 13(A) demonstrates Congressional intent to limit enforcement to the Secretary's withholding of funds and to challenges to the Secretary's acts pursuant to the APA.

Although suggestive that § 13(A), like § 30(A), forecloses any private cause of action to providers, Armstrong and the Ninth Circuit's pre-Armstrong authority ultimately leave the court with uncertain guidance. Compare Armstrong, 135 S. Ct. at 1387 (plurality) (the language of § 1396a(b) "reveals no congressional intent to create a private right of action" for violations of § 1396a(a)'s provisions) with Sanchez, 416 F.3d at 1061–62 (suggesting that each subsection of § 1396a(a) should be evaluated independently under 42 U.S.C. § 1983 because "it does not describe every requirement in the same language. Some requirements . . . focus on individual recipients, while others are concerned with the procedural administration of the Medicaid Act by the States[.]").

As such, the court assumes without deciding that petitioners can bring a private cause of action to seek relief for violations of § 13(A).

**b.    Writ of Mandate**

Petitioners argue that the SPAs violated § 13(A), so the amendments should be

18

set aside and the court should order respondents to pay petitioners "the amounts they would have received under the PIRL without the application of the illegal AB 5 and AB 1183 rate cuts." Dkt. 64 at 24.

"A writ of mandate may be issued . . . to compel the performance of an act which the law specially enjoins, as a duty resulting from an office[.]" Cal. Civ. Proc. Code § 1085; California Hosp. Ass'n, 188 Cal. App. 4th at 570–71 (mandamus "will lie to force a particular action . . . when the law clearly establishes the petitioner's right to such action") (internal quotation marks omitted). "There are two essential requirements to the issuance of a traditional writ of mandate: (1) a clear, present and usually ministerial duty on the part of respondent, and (2) a clear, present and beneficial right on the part of the petitioner to the performance of that duty." California Hosp. Ass'n, 188 Cal. App. 4th at 568 (quoting California Ass'n for Health Servs. at Home v. State Dep't of Health Servs., 148 Cal. App. 696, 704 (2007)); accord Payne v. Superior Court, 17 Cal. 3d 908, 925 (1976). The court assumes without deciding that petitioners satisfy the requirements for a writ of mandate and turns to the merits of petitioners' § 13(A) claim.

### i.    Deference Owed to CMS Review

The parties do not dispute that the SPAs were approved by CMS. FAP ¶ 36; Emery Decl. ¶ 20, Ex. O at 2. The Ninth Circuit has directed that "Congress intended SPA approvals to have the force of law[.]" Managed Pharmacy Care, 716 F.3d at 1249. Notably, petitioners do not challenge CMS's approval of the SPAs in this action; rather, they argue that DHCS abused its discretion by implementing the CMS-approved amendments.

Of course, "[b]efore granting approval, the agency [CMS] reviews the State's plan and amendments to determine whether they comply with the statutory and regulatory requirements governing the Medicaid program." Douglas, 565 U.S. at 610. Here, after that review, "[t]he federal agency charged with administering the Medicaid program . . . determined that the challenged" plan complied with federal law. Id. at 614. In its approval, CMS stated that "In light of the data CMS reviewed, the monitoring plan, and

1    our consideration of stakeholder input, we have determined that these amendments

2    comply with section 1902(a)(30)(A) of the Act and all other applicable requirements of the

3    Act[.]" Emery Decl., Ex. O at 2.

4         As the Supreme Court recognized, "[t]hat agency decision does not change the

5    underlying substantive question, namely whether California's statutes are consistent with

6    a specific federal statutory provision . . . . But it may change the answer." Douglas, 565

7    U.S. at 614. That is because "the agency [CMS] has acted under this [Congressional]

8    grant of authority. That decision carries weight." Id. The Court in Douglas disapproved

9    when "the Ninth Circuit . . . declined to give weight to the Federal Government's

10   interpretation of the federal statutory language" because "ordinarily review of agency

11   action requires courts to apply certain standards of deference to agency decisionmaking."

12   Id. at 615. And the Court expressed skepticism that "once the agency has taken final

13   action, a court should reach a different result in a case like this one, depending upon

14   whether the case proceeds in a Supremacy Clause action rather than under the APA for

15   review of an agency decision." Id.

16        Here, as explained in Douglas, failing to afford the federal agency deference in its

17   interpretation of federal law "would subject the States to conflicting interpretations of

18   federal law by several different courts (and the agency), thereby threatening to defeat the

19   uniformity that Congress intended by centralizing administration of the federal program in

20   the agency and to make superfluous or to undermine traditional APA review." Id. Also

21   like Douglas, "the agency is not a participant in the pending litigation" which could

22   ultimately "decide whether the agency-approved state rates violate the federal statute."

23   Id. at 616. So, petitioners here have brought an action to which CMS is not a party that

24   turns on the question of whether a state plan approved by CMS violated the Medicaid

25   Act.

26        For the reasons explained above, including because the SPAs challenged by

27   petitioners were approved by the federal agency responsible for implementing the federal

28   law giving rise to the challenge, the court finds that CMS's approval of the state plan is

20

owed deference.

Although petitioners do not challenge CMS's approval of the SPAs directly in this action, and they do not join CMS as a defendant, the relief petitioners seek would require the court to find that CMS abused its discretion when approving the SPAs. Although Hoag held that such review is possible under certain provisions of the Medicaid statute without affording CMS Chevron deference, Hoag was brought against the Secretary of HHS herself pursuant to an APA challenge that allowed the federal agency to defend its interpretation of the statute—an importantly different posture from the present case. Compare Hoag, 866 F.3d at 1081 (APA challenge brought against the Secretary), and Managed Pharmacy Care, 716 F.3d at 1240 (affording CMS Chevron deference when approving state plans and abrogating Orthopaedic Hospital by deferring to CMS's interpretation of § 30(A): "the Secretary's approval complies with the APA"), with Orthopaedic Hospital v. Belshe, 103 F.3d 1491, 1495 (9th Cir. 1997) (reviewing a state agency's interpretation of § 30(A) without CMS being party to the case), abrogated by Managed Pharmacy Care, 716 F.3d at 1249 (abrogating Orthopaedic Hospital's holding with respect to § 30(A)'s requirements).

### ii.    The Merits Under § 13(A)

Even if CMS's approval was not owed deference, petitioners' challenge under Section 13(A) fails on the merits. Petitioners argue that Section 13(A) was violated for two reasons: (1) petitioners were not provided an adequate opportunity to review and comment on the plan; and (2) the SPAs were impermissibly implemented before they gained federal approval.

First, petitioners argue that § 13(A) mandates an opportunity for providers to comment on rates when they are "proposed," which they argue means before the rates are passed by the legislature. Dkt. 64 at 20; Dkt. 72 at 12–13. Petitioners argue that review and comment post-enactment is meaningless because the legislation did not provide for discretion to alter the rate cuts, meaning that the legislation was final and that any review and comment could not have any effect. Dkt. 64 at 20 (citing Santa Rosa

21

Mem'l Hosp. v. Maxwell-Jolly, 380 F. App'x 656, 657 (9th Cir. 2010), vacated and remanded sub nom. Douglas, 565 U.S. 606); Dkt. 69 at 7.

Petitioners argue that the state's notices were ineffective because all but one were issued "after the legislative enactment of the rate cuts." Dkt. 64 at 23; see also Dkt. 69 at 7. They argue that the single notice issued before enactment of the statute was substantively defective for a number of reasons. Dkt. 64 at 23–24.

Petitioners also argue that under rare circumstances the legislative process itself can satisfy the notice and comment period, but the legislative process here did not provide notice. Dkt. 64 at 21. Petitioners rely primarily on Mission Hospital Reg'l Med. Ctr. v. Shewry, 168 Cal. App. 4th 460 (2008) ("Mission Hospital").

Respondents argue that state plans and amendments are presented for approval to CMS, so they are proposed rates until they are approved by CMS. They argue that Mission Hospital clarifies that notice must be published before the measure is effective, not before it is passed by the legislature. Dkt. 66 at 24.

Respondents argue that they "published nine different notices, eight of which were published prior to the implementation of the AB 5 and AB 1183 reductions, all of which included a name and address for providing public comments (unless they were the final notices after public comments were considered)." Id. at 23 (citing Ong Decl. ¶¶ 9–17, Exs. A–I). They argue that the notices met the statutory requirements because they described the payment reductions and the statutory justifications for the changes, and they sought and/or acknowledged public comment regarding the changes.

The parties dispute whether notice under § 13(A) must be given before legislative enactment of a state plan amendment, or whether notice must be given before the plan's rate change is implemented or approved by CMS. The parties have not presented, and the court has not found, controlling authority on this question. One district court in this Circuit that addressed the question did so when considering a motion for preliminary injunction. California Hosp. Ass'n v. Maxwell-Jolly, 776 F. Supp. 2d 1129, 1147 (E.D. Cal. 2011). The plaintiff in that case argued that the state plan violated § 13(A) "because

the majority of the notices came after the statute already was enacted." Id. (internal

quotation marks omitted). Considering whether notices provided after legislative

enactment of a state plan could comply with 13(A), that court held that "Section 13(A)

requires that a public notice and comment procedure precede any alteration to Medi-Cal

reimbursement rates . . . [not] that compliance with Section 13(A) must *precede*

legislation implementing a rate change." Id.

The parties discuss Mission Hospital extensively with respect to this question, but

that case addressed a substantially different question than what is presented here, and it

concerned materially different facts.[8] First, Mission Hospital addressed whether the

legislative process itself could satisfy the notice requirements imposed by § 13(A)—but

respondents in this case rely upon actually-published notices, not the legislative process.

That difference alone distinguishes many of the arguments petitioners raise in reliance on

that case.

Second, that case involved notices that were not published until several months

after the legislative state plan went into effect. 168 Cal. App. 4th at 483, 492. Petitioners

in that case also did not have actual notice of the rate changes until after they took effect.

Id. at 488, 491–92 (citing California Ass'n of Bioanalysts v. Rank, 577 F. Supp. 1342,

1349 (C.D. Cal. 1983), which excused notice deficiencies under a related regulation

where the plaintiffs "had received actual notice of the regulations before they went into

effect.").

Petitioners read Mission Hospital to hold that § 13(A) requires that any rate

change passed by the legislature must have more deliberation in that body than the bills

in Mission Hospital had. Not so. The Mission Hospital court only addressed the question

of whether the legislature's deliberations provided effective notice because those

---

[8] Adding to the confusion, because § 13(A) was new at the time, the Mission Hospital opinion primarily surveyed case law considering the notice requirements found in 45 C.F.R. § 447.205. Those cases made clear that notice under 45 C.F.R. § 447.205 must be published "prior to the change taking effect . . . even when the legislative action vested little discretion in the implementing agency." Id. at 486–87 (emphasis added).

23

petitioners had no actual notice, and those respondents did not publish any notice at all until well after the rates went into effect. That is, the reasoning petitioners rely upon was based on an exception to § 13(A) for legislative action. Mission Hospital, 168 Cal. App. 4th at 492. Here, unlike in Mission Hospital, respondents do not attempt to rely on a legislative exception to § 13(A)—neither party disputes that notices were issued before the rates were approved by CMS or went into effect. See Ong Decl. ¶¶ 9–17 & Exs. A–I (eight of the nine notices concerning the AB 5 and/or AB 1183 were published prior to the effective date of the payment reductions); Dkt. 64 at 23; Dkt. 69 at 6–7. Petitioners also do not challenge the adequacy of the notices, other than a single notice issued on September 5, 2008. E.g., Dkt. 64 at 23–24 ("The basic problem with these notices is that all but one of them were issued after the legislative enactment of the rate cuts."); Dkt. 69 at 6–7 ("the Department's post-enactment notices . . . are no longer relevant or applicable to this Court's analysis of Section 13(A). . . . Thus, the only notice where there could have been any 'review and comment' on the 'proposed rates' was the September 5, 2008, notice[.]"). As such, the question addressed in Mission Hospital of whether the legislative process itself can provide effective notice is simply not present in this case.

This court finds that § 13(A) can be satisfied by publication of the rates the state proposes to CMS (including the underlying methodologies and justifications for those rates), a reasonable review and comment period prior to CMS approval, and publication of the final rates, methodologies, and justifications after CMS approval. See 42 U.S.C. § 1396a(a)(13)(A). That is the procedure that was followed here. In fact, it appears to have been effective—CMS specifically drew provider comments to the state's attention and directed that the state "must address the concerns described" by those comments in subsequent submissions to CMS before the plan would be approved. Dkt. 66-2, Ex. 1, ECF p.6.

Second, petitioners argue that both bills were implemented before federal approval, or even the possibility of federal approval, because they were implemented before they were submitted to CMS. Dkt. 69 at 23–24. Petitioners argue that "CMS did

24

1   not approve any of the rate cuts until October 27, 2011, well after the date that both rate

2   cuts had already been repealed by the California Legislature." Id. at 23.

3       Respondents argue "that the Medicaid Act's governing regulations expressly

4   permit states to implement SPAs *prior* to formal approval by the federal government[.]"

5   Dkt. 74 at 9 (citing 42 C.F.R section 447.256(c) (SPA "will become effective not earlier

6   than the first day of the calendar quarter in which an approvable amendment is

7   submitted")). Respondents argue: "In permitting a SPA amendment to be retroactively

8   'effective' by up to three months *prior* to the date that it is *submitted* to CMS, the Medicaid

9   regulations plainly permit states to implement rate changes prior to federal approval." Id.

10  at 9.

11      The rule in the Ninth Circuit is clear. "[T]he State was obligated to submit and

12  obtain approval of its SPA before implementation." Developmental Servs. Network v.

13  Douglas, 666 F.3d 540, 545–46 (9th Cir. 2011) (explaining the history of the issue in the

14  Ninth Circuit); accord California Ass'n of Rural Health Clinics v. Douglas, 738 F.3d 1007,

15  1018 (9th Cir. 2013) ("Before our decision in Developmental Services Network, there may

16  have been a reasonable expectation that the Department would attempt to implement

17  changes to a state plan prior to receiving CMS's approval; Developmental Services

18  Network forecloses that possibility. . . . We held, unambiguously, that 'the State [is]

19  obligated to submit and obtain approval of its SPA before implementation.' Id. at 546.").

20      However, even if petitioners can bring a private cause of action to challenge the

21  early implementation, their "claim is moot because CMS retroactively approved [the]

22  amendment to California's Medi-Cal plan. As the wrong that [petitioners] sued to right

23  (CMS's lack of approval of [the amendment] prior to the law's implementation) has been

24  righted by CMS's retroactive approval, [petitioners'] claim has lost 'its character as a live

25  controversy[.]' Accordingly, [petitioners'] prior approval claim is moot." Aids Healthcare

26  Found. v. Douglas, 666 F. App'x 601, 603 (9th Cir. 2016) (citations omitted); see also

27  California Ass'n of Rural Health Clinics, 738 F.3d at 1017. While not precedential, the

28  Aids Healthcare Foundation opinion is highly persuasive under the present facts, and its

underlying reasoning applies here.  As such, the court finds that petitioners' claim that the SPAs were implemented impermissibly early, if they can bring such a claim, is moot.

### 3.    Declaratory Relief

Respondents argue that petitioners' claim for declaratory relief—framed as their second cause of action—fails for two reasons.  First, it is derivative of their first cause of action for mandamus and fails for the same reasons.  Second, it fails substantively. Dkt. 66 at 18–19.

Although petitioners do not address the issue, their request for declaratory relief— styled as a standalone claim—is entirely derivative of their petition for a writ of mandate. As such, the cause of action for declaratory relief fails for the same reasons.

Furthermore, the declaratory relief claim fails because that remedy can only operate prospectively, but petitioners seek purely retrospective money damages.  See Canova v. Trs. of Imperial Irrigation Dist. Emp. Pension Plan, 150 Cal. App. 4th 1487, 1497 (2007) ("[d]eclaratory relief operates prospectively to declare future rights, rather than to redress past wrongs"); Envtl. Def. Project of Sierra Cty., 158 Cal. App. 4th 877, 885 (2008); Bayer v. Neiman Marcus Grp., Inc., 861 F.3d 853, 868 (9th Cir. 2017) ("declaratory judgment merely adjudicating past violations of federal law—as opposed to continuing or future violations of federal law—is not an appropriate exercise of federal jurisdiction").  Because the statutes are not currently in effect, the limited relief of declaring them invalid or unlawful would provide petitioners no remedy.

### 4.    Other Allegations

Petitioners raise an additional statute and regulation in their petition, but not in their moving or opposition papers.  Their petition cites 42 U.S.C. § 1396a(a)(8) and 42 C.F.R. § 447.253(e).  FAP ¶¶ 41, 43.  Respondents have moved for summary judgment unopposed with respect to each.  Dkt. 66 at 24–25.

When CMS approved the SPAs, it "determined that these amendments comply with section 1902(a)(30)(A) of the Act and all other applicable requirements of the Act[.]" Emery Decl., Ex. O at 2.  Congress intended that approval "to have the force of law."

1  <u>Managed Pharmacy Care</u>, 716 F.3d at 1249.  CMS's approval is owed deference,

2  particularly with respect to the implementing regulation in the Code of Federal

3  Regulations.  Additionally, petitioners' claim under 42 U.S.C. § 1396a(a)(8) is entirely

4  unsupported.  The complaint is conclusory and lacks factual allegations supporting it, and

5  petitioners' papers ignore the issue entirely, pointing to no evidence supporting the claim

6  in response to respondents' motion.  <u>See</u> <u>Celotex</u>, 477 U.S. at 325 ("the burden on the

7  moving party may be discharged by 'showing'—that is, pointing out to the district court—

8  that there is an absence of evidence to support the nonmoving party's case"); <u>see also</u>

9  Fed. R. Civ. P. 56(c), (e) (when the moving party has carried its burden, the nonmoving

10  party must respond with specific facts, supported by admissible evidence, showing a

11  genuine issue for trial).  For those reasons, summary judgment is appropriate for

12  respondents with respect to petitioners' claims under both 42 U.S.C. § 1396a(a)(8)[9] and

13  42 C.F.R. § 447.253(e)[10].

14       **5.**    **Respondents' Evidentiary Objections and Requests for Judicial Notice**

15       Respondents' evidentiary objections and requests for judicial notice are DENIED

16  as moot.

17                           **CONCLUSION**

18       For the foregoing reasons, petitioners' motion for summary judgment is DENIED.

19

20  [9] Petitioners cannot bring a claim under 42 U.S.C. § 1396a(a)(8) for the additional reason
that they do not have standing to do so because the subsection applies to individuals

21  receiving Medi-Cal benefits, not to hospitals administering them.  <u>E.g.</u>, <u>Sanchez</u>, 416
F.3d at 1061 (finding no enforceable right under § 1983 provided by § 30(A), and

22  distinguishing section (a)(8) which "specifically focus[es] on entitlements available to 'all
eligible *individuals*' and 'provide[s] ... for making medical assistance available ... to

23  all *individuals*'"); <u>see generally</u> <u>Mission Hospital</u>, 168 Cal. App. 4th at 479–80 (regarding
standing); <u>California Hosp. Ass'n</u>, 188 Cal. App. 4th at 569 (same).

24  [10] Moreover, 42 C.F.R. § 447.253(e) explicitly grants discretion to determine which issues
regarding "payment rates" are appropriate for appeal.  California has a system for

25  adjudicating audit and reimbursement disputes, but not for challenging the underlying
rate setting methodology.  Cal. Welf. & Inst. Code § 14171.  As such, the court finds that

26  California's appeal process complies with the regulation's requirement.  <u>See, e.g.</u>, <u>W.</u>
<u>Virginia Univ. Hospitals, Inc. v. Casey</u>, 885 F.2d 11, 30–31 (3d Cir. 1989) (an appeals

27  procedure allowing "providers to challenge their payment rates on the ground of the
*application* of the state's reimbursement methodology" complied with a similar provision

28  formerly found at 42 C.F.R. § 447.253(c) even though "it does not allow providers to
challenge the validity of the methodology itself").

The California Department of Health Care Services's and its director, Jennifer Kent's, motion for summary judgment is GRANTED. The clerk shall close the case.

**IT IS SO ORDERED.**

Dated: July 20, 2018

_____
PHYLLIS J. HAMILTON
United States District Judge